FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM F. MARX,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | NO: 2:16-CV-00352-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 16, 17. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Joseph M. Linehan. The defendant is represented by Special Assistant United States Attorney Michael Tunick. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the

Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 16, and

**DENIES** Defendant's Motion for Summary Judgment, ECF No. 17.

## JURISDICTION

Plaintiff William F. Marx protectively filed for disability insurance benefits on May 13, 2014, alleging an onset date of April 23, 2012. Tr. 359. On August 4, 2014, Plaintiff was awarded a closed period of benefits from April 23, 2012 to June 12, 2103, which was affirmed on reconsideration. Tr. 137-38. On October 22, 2014, Plaintiff filed a request for reconsideration claiming he continued to be disabled after the closed period, which was denied. Tr. 177, 181-83. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ R.J. Payne on April 24, 2015. Tr. 41-124. The ALJ denied benefits on August 27, 2015. Tr. 152-71. On March 18, 2016, the Appeals Council vacated the decision and remanded the matter to ALJ Payne to clarify the relevant period at issue at the hearing level, and "apply the sequential evaluation process to determine whether claimant was disabled during the period at issue." Tr. 173-74. A second hearing was held before ALJ Payne on April 25, 2016. Tr. 1291-1337. Plaintiff was represented by counsel and testified at the hearing. *Id.* Medical expert Reuben Beezy, M.D. testified that Plaintiff met the listing through October 2015, and after that he "would be sedentary." Tr. 1296-1319. On May 5, 2016, ALJ Payne found Plaintiff was under a disability from April 23, 2012 through

February 1, 2015; but found medical improvement occurred February 2, 2015 and Plaintiff's disability ended as of that date. Tr. 16-38. The Appeals Council denied review on June 11, 2016. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

William F. Marx ("Plaintiff") was 35 years old at the alleged onset date. Tr. 52. Plaintiff completed twelfth grade and two years of college. Tr. 1319-1320. He was diagnosed aplastic anemia in February 2012, and underwent an allogenic stem cell transplant on June 12, 2012. Tr. 24, 942. After the transplant, in November 2012, Plaintiff was diagnosed with Graft Versus Host Disease ("GVHD"). *See* Tr. 646, 661. In January 2015, Plaintiff had a diagnosed "flare" of GVHD, which was treated, and improved in February 2015. Tr. 1226-1240, 1258-1261. Then, in October 2015, medical records show a "possible flare" of GVHD. Tr. 1280-1289. The record before the ALJ, and this Court, does not include evidence of treatment after October 2015. *See* Tr. 28.

At the second hearing, Plaintiff testified that since October 2015, if he does not take a nap every day, it "takes a minimum of three days to recover;" and he

only sleeps through the night twice in a two week period. Tr. 1322-1323. He testified that he could walk around a three block loop at the furthest; could stand for five minutes at a time, and longer if he has a counter to lean on for balance; could sit for an hour and a half; and has three to four "good days" in an average week. Tr. 1329-1332. Plaintiff testified that he has joint pain and "burning skin;" and has had "mild flares" of GVHD since October 2015, which often happens when he starts to taper off of Prednisone. Tr. 1333-1335.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends. 20 C.F.R. § 404.1594 (2012).[1] This multi-step continuing disability review process is similar

---

[1] Many of the regulations cited in this decision were revised effective March 17, 2017. *E.g*., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404. 1594). Since the revisions were not effective at the time of the ALJ's decision, they does not apply

to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement.  *Compare* 20 C.F.R. § 404.1520 *with* § 404.1594(f) (2012). A claimant is disabled only if her impairment is "of such severity that [he] is not only unable to do [his] previous work[,] but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits continues or ends involves an eight-step process.  20 C.F.R.  § 404.1594(f)(1)-(8) (2012).  The first step addresses whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1) (2012).  If not, step two determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1.  20 C.F.R. § 404.1594(f)(2) (2012). If the impairment does not meet or equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3) (2012). Medical improvement is "any decrease in the medical severity" of the impairment

to this case.  For revised regulations, the version effective at the time of the ALJ's decision is noted.

that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1) (2012).

If there has been medical improvement, at step four, it is determined whether such improvement is related to the claimant's ability to do work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 404.1594(f)(4) (2012). If the answer to step four is yes, the Commissioner skips to step six and inquires whether all of the claimant's current impairments in combination are severe. *Id.* If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step five. *Id.*

At step five, if there has been no medical improvement or the medical improvement is not related to the ability to do work, it is determined whether any of the special exceptions apply. 20 C.F.R. § 404.1594(f)(5) (2012). At step six, if medical improvement is shown to be related to the claimant's ability to work, it is determined whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1594(f)(6) (2012); *see also* 20 C.F.R. § 404.1521 (1985). If the step six finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. 404.1594(f)(6) (2012).

If the step six finding is that the claimant's current impairments are severe, at step seven, a residual functional capacity finding is made and it is determined whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7) (2012), 404.1520(e); *see also* S.S.R. 82-61.

Finally, at step eight, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given her age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1594(f)(8) (2012). If the claimant cannot perform a significant number of other jobs, she remains disabled despite medical improvement; if, however, she can perform a significant number of other jobs, disability ceases. *Id*.

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 23, 2012, the date the Plaintiff became disabled. Tr. 24. At step two, the ALJ found that from April 23, 2012 through February 1, 2015, the period during which Plaintiff was under a disability, he had the following severe impairments: aplastic anemia; and graft versus host disease. Tr. 24. The ALJ also found that from April 23, 2012 through February 1, 2015, the period during which Plaintiff was disabled, the severity of Plaintiff's impairments met the criteria of sections(s) 7.17 and 13.28 of 20 CFR Part 404, Subpart P, Appendix 1; thus,

Plaintiff was under a disability, as defined by the Social Security Act, from April 23, 2012, through February 1, 2015. Tr. 24-27. At step three, the ALJ found that medical improvement occurred as of February 2, 2015, the date Plaintiff's disability ended. Tr. 27. At step four, the ALJ found that the medical improvement that has occurred is related to the ability to work because Plaintiff no longer has an impairment or combination of impairments that meets or medically equaled the severity of a listing. Tr. 27.

Because the finding at step four indicated medical improvement, the ALJ skipped to step six and found that Plaintiff's severe impairments were the same as those present from April 23, 2012 through February 1, 2015. Tr. 27. The ALJ concluded that beginning February 2, 2015, Plaintiff has had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to no climbing of ladders, ropes or scaffolds; and no exposure to unprotected heights or hazardous machinery. Tr. 27. At step seven, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 30. At the last step, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there have been jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 30. On that basis, the ALJ concluded that Plaintiff's disability ended February 2, 2015. Tr. 30.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II of the Social Security Act.  ECF No. 16. Plaintiff raises the following issue for this Court's review: whether Plaintiff was denied a full and fair hearing.

## DISCUSSION

Plaintiff argues he was denied a full and fair hearing.[2] ECF No. 16 at 15-16. Additionally, Plaintiff argues the ALJ failed to properly evaluate the medical evidence, improperly determined Plaintiff was not credible, erred by finding Plaintiff did not meet the listings at step three for the period after February 2, 2015, failed to support the RFC assessment with substantial evidence, and erred by

---

[2] Plaintiff argues that he was denied a fair opportunity to present evidence "in the alternative," that is, only if the Court declines to find that Plaintiff continued to meet the listing at step three after February 2, 2015, and/or make any findings as to whether the ALJ erred in finding medical improvement occurred after the same date.  *See* ECF No. 16 at 15. However, as discussed in detail herein, the ALJ failed to conduct a full and fair hearing as to the relevant time period at issue in this case, particularly in regards to Plaintiff's RFC.  Thus, the Court remands to the ALJ in order to fully and fairly develop the record as to the time period after February 2, 2015, and properly reconsider all steps of the sequential analysis after that date.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

failing to hear testimony from a vocational expert. ECF No. 16 at 7-16. Because the Court agrees that Plaintiff was denied due process in this case for the reasons discussed below, the case is remanded with instructions to conduct a de novo hearing as to the time period beginning February 2, 2015. Thus, the Court need not consider the additional arguments.

"[A]pplicants for social security benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Accordingly, under the Social Security Act, claimants shall be given reasonable notice and opportunity for a hearing with respect to a decision rendered by an ALJ, during which the ALJ may examine witnesses and receive evidence. 42 U.S.C. 405(b)(1). Hearing procedures may be informal, but they must be "fundamentally fair." *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971); *see also Martise v. Astrue*, 641 F.3d 909, 921–22 (8th Cir. 2011) ("procedural due process requires disability claimants to be afforded a full and fair hearing"); *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010) ("In the context of a social security hearing, due process requires that the proceedings be full and fair."). Moreover, the "ALJ in a social security case has an independent duty to fully and fairly develop the record and to

assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, Plaintiff argues he was denied "a fair opportunity to present evidence relevant to the issues." Specifically, he contends that

> the ALJ's written decision analyzes a RFC period that he told [Plaintiff's] attorney that he would not be using. In Finding/Conclusion #9, the ALJ considered [Plaintiff's] residual functional capacity beginning February 2, 2015. However, at the hearing, the ALJ specifically said he would not be considering [Plaintiff's] RFC after September 30, 2014, and later changed the date to January 1, 2015. The evidentiary record is unclear as to the relevant period for considering [Plaintiff's] RFC. Moreover, [Plaintiff] was denied the opportunity to fully address the RFC issue. [Plaintiff's] attorney was told to restrict evidence to a timeframe that the ALJ did not use. As noted in the Appeals Council remand decision, the contradiction in the hearing record and ALJ findings raises the issue of whether [Plaintiff] received a full and fair hearing.

ECF No. 16 at 15-16 (citing Tr. 173). Defendant argues that Plaintiff's argument "misreads" the transcript and contends that the ALJ did not "restrict the presentation of evidence to a particular time-period or state that he would not be considering Plaintiff's RFC after a particular date." ECF No. 17 at 16. According to Defendant, the ALJ told counsel at the April 2016 hearing that he would assess Plaintiff's RFC after January 1, 2015. ECF No. 17 at 16 (citing Tr. 1336). However, after exhaustive review of the hearing transcript, the Court finds this statement is not an entirely accurate representation of the record; nor does it address the consistent indecision expressed by the ALJ in deciding the relevant time period under consideration throughout the hearing.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

At the start of the April 2016 hearing, the ALJ accurately notes that Plaintiff has filed an application for disability benefit under Title II of the Social Security Act and has met the earnings requirement only through September 30, 2014; thus, in order "to prevail in this case," Plaintiff must show he became disabled on or before the date last insured, September 30, 2014.  Tr. 20, 1293. The ALJ then notes that he "believes" that Plaintiff met the listing at step three for the time period of April 25, 2012 to June 12, 2013, and somewhat inexplicably asks Plaintiff's counsel if Plaintiff would be willing to amend his alleged onset date to June 13, 2012; which counsel agrees to "with the understanding that the listing was met for the year prior."  Tr. 1294. However, the written decision does not reflect an amendment of the alleged onset date.

Next, at the hearing, the ALJ asked Plaintiff's attorney if there were any medical records outstanding that predate the date last insured ("DLI") September 30, 2014, and noted the reason he is "talking about that particular day" is that the Appeals Council remanded "for the purpose of establishing …the date in question in this hearing." Tr. 1295-96. In keeping with this goal, the ALJ began his examination of the medical expert ("ME") by noting that the "determination in this case to the claimant's condition or conditions from the onset date of April 23rd, 2012 to September 30th, 2014, the date last insured, hereinafter called the relevant period." Tr. 1297. This would seem to imply that the ALJ was considering a closed

period of disability; however, after the ME opines that Plaintiff would meet the listings up to October 2015, the ALJ states that he will "need an RFC for October of 2015 onward, unless, unless, the claimant's satisfied within closed period on the meeting of listings here." Tr. 1314. Plaintiff's counsel says "no," at which point the ME opines as to Plaintiff's RFC from October 2015 forward. Tr. 1315-18. Then, at the conclusion of the ME's testimony, the following exchange occurs between the ALJ and the ME:

ALJ: And the -- this RFC is for the period prior September 30th, 2014, Doctor?

ME: How, how much prior?

ALJ: Well, that's the date last insured.

ME: Okay.

ALJ: But we're right -- actually you're running it, you're running it from October 1st, 2015 --

ATTY: Yes.

ALJ: -- which is the --

ATTY: The date he no longer meets the listing?

ME: Right.

ALJ: Okay. All right. Okay.

Tr. 1318-19.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

Next, upon questioning of Plaintiff, the ALJ almost immediately appears to limit his testimony to the period prior to the date last insured, as opposed to the period since October 2015 when the ME opined Plaintiff met the listing.

ATTY: Are you still experiencing since October of last year fatigue?

PL: Yes.

ATTY: In the course -- how many days a week do you – do you take naps?

PL: Every -- if I can.

ALJ: Well, again, the date last insured is September of 2014.

ATTY: The --

ALJ: So –

ATTY: -- date last insured, Your Honor, we have listings testimony through last October.

ALJ: I know.

ATTY: So I'm coming from last October.

ALJ: Okay. Go ahead.

ATTY: Since --

ALJ: It has to be before October. Now -- well okay.

ATTY: From October.

ALJ: This gets a little tricky.

ATTY: Yeah.

Tr. 1320-21. Plaintiff's counsel then proceeds to ask Plaintiff questions about his fatigue both before, and after, October 2015 (Tr. 1321-23); until the following exchange occurs between the ALJ and Plaintiff's counsel regarding the relevant time period:

> ALJ: And, and just for the record, I've, I've been thinking a little bit about this. I want to restrict that RFC to the prior -- the, the time prior to the date last insured. Well, I'll let -- I'll -- I'll move to the meeting out prior -- past the date last insured as far as the RFC. It will be for the period September -- before September 30th, 2014.

> ATTY: I'm confused, Your Honor.

> ALJ: Well, that's the best I can say it.

> ATTY: Okay. Are you --

> ALJ: Because I -- because if I go to the vocational expert I, I can either give him that RFC or I'll give him no RFC at all and just, and just, and just stop with the, the, the meeting of the listing.

> ATTY: Well, he meets the listings into October.

> ALJ: I understand that.

> ATTY: Okay.

> ALJ: But the -- we still have a date last insured problem. I mean, that, that carries it past that point.

1    ATTY: Okay.

2    ALJ: But as far as the date last insured I would look at what, what in the

3    RFC would be reasonable for that period of time when we go to the

4    vocational expert. And that's what I'm going to do.

5    ATTY: Okay. Even though the doctor said that would be the RFC

6    subsequent to the listing being met?

7    ALJ: I know because the date last insured problem.

8    ATTY: Okay. But if he's --

9    ALJ: It's, it's fine to the listing.

10   ATTY: Yeah.

11   ALJ: It's not fine to the RFC.

12   ATTY: So are -- I, I am thoroughly confused at the point, Your Honor,

13   frankly.

14   ALJ: I'm sorry.

15   ATTY: Okay.

16   ALJ: I'm just stating what I'm going to do.

17   ATTY: Okay.

18   ALJ: If I can't -- I -- first of all, I don't believe the doctor would go out to

19   October 2015. I believe it'd be January of 2015, but I'll, I'll put over the

20   doctor on that.

1    ATTY: To October of --

2    ALJ: To October … of 2015. I think, I think it really goes to January 1st of

3    2015, which is a little bit at -- three months after the date last insured, which

4    is, which is okay. It's a -- we can go over the, the line on what meets a

5    listing. But as far as the RFC, I --

6    ATTY: So between September of 2014 and now is when you want me to ask

7    the limitations of Mr. –

8    ALJ: **No, I don't care what his limitations are now because the, the date**

9    **last insured is September 30th, 2014. What his limitations are now don't**

10   **-- aren't relevant**.

11   ATTY: Okay. Thank you. Prior to September of 2014, were you napping

12   twice --

13   ALJ: We'll just say October, prior to October of 2014 because the, the date

14   last insured is September 30th, 2014.

15   Tr. 1323-25 (emphasis added). After a short break, the ALJ then states that after

16   further "thought" he has decided not to assess an RFC because any RFC would be

17   after the date last insured. Tr. 1328. Despite the ALJ's stated intention to not assess

18   an RFC, Plaintiff's attorney continues asking questions regarding his subjective

19   complaints and limitations at the time of the hearing. Tr. 1329-35. Finally, at the

20   conclusion of the hearing, the ALJ states:

1   ALJ: … I don't want to blindside you. I said that, that I thought I'd [be]

2   going up to October 1st, 2015 based on the medical expert's testimony. But

3   I'm looking again at 21 page 8 and it said he had the possibility of a flare….

4   So I'm going to go to January 1st, 2015. And again, that's after the date last

5   insured, but that's okay. It -- we can continue on after the date last insured

6   with that as far as an RFC's concerned now. Now, I'm going to do an RFC

7   after, after the date last insured. And we don't need an RFC since we have

8   meeting through the date last insured. So I have no further questions.

9   ATTY: Okay.

10  ALJ: Anything else you'd like to add? I'm not going to call a vocational

11  expert either.

12  ATTY: You're not going to?

13  ALJ: I'm not going to call the vocational expert.

14  ATTY: Okay.

15  ALJ: Because there's nothing to give him.

16  ATTY: I agree.

17  Tr. 1335-36.

18      Despite the apparent indecision as to the relevant time period during the

19  hearing, outlined in detail above, the ALJ's written decision found medical

20  improvement occurred on February 2, 2015, and assessed an RFC from that date to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~
19

the date of the decision. Tr. 21, 27. Plaintiff argues the ALJ's restriction of evidence regarding his RFC during the hearing "to a time frame he did not use" denied him the opportunity to fully address the RFC issue, and thus denied him his due process right to a full and fair hearing. ECF No. 16 at 15-16. The Court agrees. During the hearing, the ALJ appears to misconstrue the DLI, September 30, 2014, as the end of a closed period of benefits after which he is not required to consider evidence; as opposed to the date Plaintiff was required to establish disability in order to receive Title II benefits. This misunderstanding is most apparent when the ALJ states he "[doesn't] care what [Plaintiff's] limitations are now because the, the date last insured is September 30th, 2014. What his limitations are now […] aren't relevant" (Tr. 1325); and is further reflected in the ALJ's written decision, which states that he did not call a vocational expert to testify "in light of the closed period, as discussed [in the decision] ending after the date last ensured of 9/30/14." Tr. 20. The Court finds the ALJ's persistent uncertainty as to the relevant time period under consideration the hearing, and the resulting confusion understandably noted by Plaintiff' counsel, deprived Plaintiff of a full and fair hearing.[3]

---

[3] As correctly noted by Plaintiff, the Appeals Council's remand of the initial decision by ALJ Payne in this case similarly found that the record was unclear regarding the relevant period at issue; and specifically noted that due to the

Defendant argues the ALJ "is responsible for assessing a claimant's RFC," and here "Plaintiff's RFC was based on Dr. Beezy's testimony." ECF No. 17 at 16. However, the ALJ's reliance on Dr. Beezy's testimony to assess the RFC does not render the due process violation harmless. An ALJ's error is harmless, including an alleged due process violation, "where it is inconsequential to the ultimate nondisability determination." *Molina,* 674 F.3d at 1115; *Ludwig v. Astrue*, 681 F.3d 1047, 1053–55 (9th Cir. 2012) (ALJ's ex parte communication violated due process but error was harmless where the record as a whole showed the ALJ's decision would not have been any different without such communication). In other words, if there remains substantial evidence to support the ALJ's ultimate non-disability determination, any error is deemed harmless and does not warrant reversal. *See id.; Carmickle v. Comm'r,* 533 F.3d 1155, 1162 (9th Cir. 2008). Here, as discussed in detail above, the ALJ did not precisely define the relevant time period during the hearing, which included Dr. Beezy's expert testimony; thus, the ALJ's reliance on Dr. Beezy's testimony in assessing the RFC cannot constitute substantial evidence to support the ALJ's ultimate finding. Moreover, the ALJ's

---

inconsistency between the hearing record, and the findings in the written decision, "it [was] not clear that [Plaintiff] received a full and fair hearing." ECF No. 16 at 15-16 (citing Tr. 173).

authority to assess the RFC does not absolve him of his independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150.

For all of these reasons, the Court finds that Plaintiff was not afforded a full and fair hearing by the ALJ, and remand is appropriate.

## CONCLUSION

The ALJ's decision was not supported by substantial evidence and free of legal error. Remand is appropriate when there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). Here, the ALJ found that "[f]rom April 23, 2012 through February 1, 2015, the severity of Plaintiff's impairments the criteria of section(s) 7.17 and 13.28 of 20 C.F.R. Part 404, Subpart P, Appendix 1;" and thus, Plaintiff was under a disability from April 23, 2012 through February 1, 2015. Tr. 24-27. This finding was supported by substantial evidence, and it is clear from the record that the ALJ would be required to find the Plaintiff disabled during this time frame regardless of the denial of due process discussed in detail above. However, because Plaintiff was not afforded a full and fair hearing, the Court cannot find there are no outstanding issues to be resolved

before a determination can be made regarding whether Plaintiff was disabled beginning February 2, 2015. Thus, remand is necessary for the ALJ to conduct a full and fair hearing, and determine whether Plaintiff was under a disability as of February 2, 2015. The ALJ should reconsider the evidence, make a new credibility determination, and conduct a new sequential evaluation analysis, ensuring all findings are supported by legally sufficient reasoning and are adequately explained.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

**DATED** December 27, 2017.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23